**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**John GARREN, Defendant–Appellant.**

**No. 87–3031.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 4, 1989.

Decided Aug. 30, 1989.

As Amended on Denial of Rehearing
Jan. 8, 1990.

Marc Blackman, Portland, Or., for defendant-appellant.

J. Douglas Wilson, Atty., Appellate Section, Crim. Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before TANG, SKOPIL and KOZINSKI, Circuit Judges.

TANG, Circuit Judge:

John Garren appeals his conviction for rafting on a federally regulated river without a permit in violation of 43 C.F.R. 8351.-2–1(e). We affirm his conviction but remand for resentencing.

## FACTS AND PROCEEDINGS

Under the authority of the Wild and Scenic Rivers Act, 16 U.S.C. §§ 1271–1287, the Bureau of Land Management ("BLM") and the United States Forest Service ("USFS") jointly regulate rafting access to designated portions of the Rouge River in Oregon through a permit system. The BLM has the lead responsibility for administering the commercial system (for profit rafting companies); the USFS has the lead responsibility for administering the non-commercial river rafting system. Under the permit system, access to the river is limited to approximately 120 people per day. Access is allocated evenly by the regulations between commercial and non-commercial users. Commercial users obtain permits to use the 60 commercial space per day. Non-commercial users file applications for use on a given day. If applications for a particular day exceed the space available, a lottery is held. In addition, non-commercial users can obtain permits from an "open pool" made up of last minute cancellations from both the commercial and non-commercial permits. Rafting without a permit subjects the rafter to various penalties.

In 1985, Garren and twelve non-commercial river rafters launched a "protest float" onto a portion of the Rogue River that the BLM and USFS regulated. Garren and his companions protested the government's regulation of rafting access on the Rogue River and purposefully launched their rafts without first obtaining requisite use permits. Garren was cited for rafting without a permit.

Garren challenged the permit system in district court, arguing that: (1) the allocation of the permits violated equal protection because non-commercial users were entitled to greater allotment based on their actual use of the river; (2) the BLM and USFS have impermissibly failed to follow their own regulations and; (3) the penalty provisions in the regulation violated equal protection.

The district court rejected Garren's challenges. The district court found that the allocation system fairly accommodated non-commercial users because they (1) never used their entire allotment and (2) in fact have used more than 50% of the actual use of the river. The district court found that the BLM and the USFS complied with their regulations regarding the equal allocation of river access. The district court reached this conclusion based on its finding that non-commercial use has exceeded the 50% goal of the regulation each and every year since 1980. With regard to penalties, the district court found that not only are commercial outfitters subject to the same criminal penalties as non-commercial outfitters, but in addition can be given administrative sanctions.

The district court found Garren guilty. The district court (1) imposed a fine of $5000; (2) sentenced Garren to six months imprisonment but suspended execution of the sentence of imprisonment; and (3) placed Garren on non-supervised probation for a period of five years and with special conditions. Garren filed a timely appeal.

### DISCUSSION

1. *Penalties for Commercial/Non–Commercial Users*

Garren contends that the government's regulations violate equal protection be-cause they subject non-commercial river rafters to harsher penalties than commercial rafters. We disagree.

a) Standard of Review

■ There is a judicial presumption favoring the validity of administrative action. *Wilderness Public Rights Fund v. Kleppe*, 608 F.2d 1250, 1254 (9th Cir.1979), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980). The district court's factual findings regarding the validity of administrative action concerning the Rogue River permit system are reviewed for clear error. Its legal conclusions are subject to de novo review. *United States v. Stone*, 813 F.2d 1536, 1538 (9th Cir.), *cert. denied*, 484 U.S. 839, 108 S.Ct. 125, 98 L.Ed.2d 83 (1987).

b) Merits

■■ Health, safety and economic classifications not based on race or gender are reviewed at the minimum level of equal protection analysis. The legislation need only classify the persons it affects in a manner rationally related to legitimate governmental objectives. *United States v. Kinsey*, 843 F.2d 383, 393–94 (9th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 99, 102 L.Ed.2d 75 (1988) (citing *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981)). Thus the regulations at issue here would only violate Garren's rights to equal protection if they did not bear any rational relationship to a legitimate government interest. *Dandridge v. Williams*, 397 U.S. 471, 485–86, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970); *Kinsey*, 843 F.2d at 394, (citing *Roberts v. Spalding*, 783 F.2d 867, 872 (9th Cir.), *cert. denied*, 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 352 (1986)).

We reject Garren's argument for two reasons. First, Garren is wrong when he asserts that non-commercial users face harsher penalties than commercial users. Commercial users not only face the same criminal penalties as non-commercial

users[1], but they are also subject to costly administrative sanctions. Second, Garren has failed to show that these regulations are not rationally related to a legitimate government interest.

### 2. *Compliance With The Regulations*

■ Garren argues that the government failed to comply with their own regulations because it failed to give commercial and non-commercial users the same "opportunity" to obtain a permit. We disagree.

We conclude that Garren's argument overlooks the plain language of the regulation. The regulation at issue provides in pertinent part:

> Total use on the river during the regulated period is restricted to approximately 120 people per day with opportunity for the non-commercial and commercial users to each use approximately 50 percent of that total use.

47 Fed.Reg. No. 38 p. 8236 (1982).

The plain language of this regulation indicates that commercial and non-commercial users are entitled to the opportunity to "each use approximately 50 percent of the total use." Garren has made no showing that the government has done anything to prevent non-commercial users from having an opportunity to use 50% of the river's total use. Indeed, the district court concluded that non-commercial use has exceeded commercial use every year since 1980. Thus, not only have non-commercial users been given an opportunity to use 50% of the river's total use, they in fact have been able to use more than 50% of the river's actual use.

In the any event, we may only strike down the BLM/USFS allocation procedure if it is arbitrary. *See Kleppe*, 608 F.2d at 1253. We conclude that Garren has failed to show that the regulation was arbitrary.

### 3. *Excessive and Illegal Sentence*

Garren contends that the district court's fine of $5000 was illegally excessive and without authority. The government concedes that the fine must be vacated but asks this court to exercise its discretion under 28 U.S.C. § 2106 to issue a mandate which allows the district court to effectuate complete resentencing.

#### a) Standard of Review

■ Determining the proper method for calculating the severity of a sentence is reviewed de novo. *United States v. Bay*, 820 F.2d 1511, 1513 (9th Cir.1987).

#### b) Merits

■ We agree that the fine was illegal and therefore vacate that part of Garren's sentence. A violation of 43 C.F.R. § 8351.2–1(e) is punishable by 43 C.F.R. § 8351.2–1(f)[2] which provides for a fine not to exceed $500.00, imprisonment not to exceed 6 months or both. Thus, the district court could not have fined Garren $5000.

■ We have the authority under 28 U.S.C. § 2106[3] to mandate complete resentencing. *See United States v. Minor*, 846 F.2d 1184, 1187 (9th Cir.1988). However,

---

1. The pertinent federal regulation provides:

   III  Enforcement of Permit Requirements
   B.  Commercial

   \*  \*  \*  \*  \*  \*

   ... An Authorized Outfitter and all agents, guides, employees, and passengers *are also subject to other penalties* prescribed under the authorities stated herein and to the penalties prescribed *under other federal, state or local laws* or regulations. (emphasis added).
   47 Fed.Reg. No. 38 (Feb. 82) at page 8237:
   Thus, the regulation provides that commercial user are subject to the same criminal penalties as non-commercial users.

2. 43 C.F.R. § 8351.2–1 provides that:

Any person convicted of violating any prohibition established in accordance with this section shall be punished by a fine not to exceed $500 or by imprisonment for a period not to exceed 6 months, or both, and shall be adjudged to pay all costs of the proceedings.

3. 28 U.S.C. § 2106 provides that:
   The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment decree, or order, or require such further proceedings to be had as may be just under the circumstances.

we decline the government's invitation to use our authority under 28 U.S.C. § 2106 to mandate complete resentencing. We limit our mandate to a correction of the excessive fine. Our mandate does not grant the district court the authority either to impose any period of imprisonment, to change the terms of the probation, or impose any additional penalties such as community service.

The conviction is AFFIRMED, the sentence is VACATED IN PART and this case is REMANDED with instructions.